ANDREW ANDERSON, Respondent, v. THE DALY MINING CO., Appellant.

Appeal—Review of Facts—Master and Servant—Negligence.

1. Where issues on questions of negligence and contributory negligence have been fairly submitted to a jury, and the jury have found in favor of one of the parties to the action, and there is evidence to support the verdict, the appellate court will not set it aside on a question as to the weight of the evidence.

2. Where the master has knowledge of the risks and dangers, not discernible, that are incident to the work to be performed by a servant, and he is also aware of the servant's inexperience, and fails to inform him of the precautions and care necessary for him to take in order to avoid injury, and the servant is injured without any negligence on his part, the master will not be allowed to exonerate himself from liability by showing that the servant failed to exercise the same degree of skill to avoid injury as his more experienced fellow workmen.

(No. 770. Decided May 18, 1897.)

Appeal from the Third district court, Salt Lake county. Hon. Ogden Hiles, *Judge.*

Action of tort by Andrew Anderson against the Daly Mining Company for injuries sustained in a mine. From judgment for plaintiff, defendant appeals.

*Bennett, Harkness, Howat & Bradley* and *H. J. Dininny,* for appellant.

Cited: *Consolidated Coal & M. Co.* v. *Ford,* 25 L. Rep. An. 848–56, (Ohio); *Cullen* v. *Bull,* 45 Pac. Rep. 1017–20;

*Petaja* v. *Aurora,* 66 N. W. Rep. 951–2; *Finlaysen* v. *Utica,* 67 Fed Rep. 507; *Davis* v. *S. P. R. R.,* 98 Cal. 19–25; *Burns* v. *Sennett,* 99 Cal. 363–8; *Lewis Con. Coal Co.* v. *Scheller,* 42 Ill. App. 619; *Kelly* v. *Norcross,* 121 Mass. 508; *McGinty* v. *Reservoir,* 155 Mass. 183–7; *City of Minn.* v. *Lundin,* 58 Fed. Rep. 525–29; *Mansco* v. *Cataract Co.,* 34 N. Y. Supp. 507; *Gulf C. & S. F. Ry. Co.* v. *Jackson,* 65 Fed. Rep. 48.

*Moyle, Zane & Costigan,* for respondent.

McCARTY, District Judge:

This action is brought to recover damages for personal injuries alleged to have been received by plaintiff, a miner, while working in defendant's mine. The complaint, in substance, alleges that plaintiff was working in the bottom of a shaft that was being sunk by defendant in its mine; that there were three shifts, and each shift was in charge of a shift boss, and in charge of all the shifts was the foreman of the mine; that said shifts were engaged in blasting in said shaft; that it was the duty of each shift boss, when the shift went off work, to report any blasts in the ground that had not been discharged; that the shift boss on the 24th day of June, 1895, left certain undischarged blasts in the ground which were not set off by reason of the shift boss being ordered by the foreman to quit blasting and do other work in the mine; that no report was made, to the shift on which plaintiff was employed, of the blasts left in the ground; that the blasts were covered up, so that they could not be seen, and because of these acts of negligence of defendant one of the blasts exploded while the plaintiff, in the exercise of due care, was engaged in working in said shaft, and in consequence plaintiff received the injuries complained of. The answer denies negligence on the part of the defend-

ant, and alleges negligence on the part of the plaintiff
and his co-employés.

Appellant contends that there is no evidence to support
or justify the verdict.   The evidence, in substance, is as
follows:   The defendant, at the time alleged in the com-
plaint, was sinking a shaft in its mine, and power drills
were used in drilling holes in the bottom of the shaft.
On the 26th day of June, 1895, plaintiff, who was a miner,
and in defendant's employ, and who never had any experi-
ence in running drilling machines or sinking shafts,
which inexperience was known to the defendant, was put
to work by defendant on the drilling machines in the
shaft.   Three eight-hour shifts were employed in sinking
the shafts, and each shift consisted of six men, one of
whom was known as a "pusher," who worked with the
other men, and whose duty it was to oversee, control, and
direct the work in the shaft, and to see that the men
worked to the best advantage.   The work in the shaft
was more dangerous than ordinary mining, and the men
working therein received 75 cents per day more than the
other miners, except the pushers, who received 50 cents
per day more than the other men employed in the shaft.
The danger consisted in drilling and setting off blasts.
It was the custom and rule for the pusher going off, if any
blasts were fired, to report all missed shots to the oncom-
ing pusher.   If no report was made of missed shots it was
assumed by the oncoming pusher and his men that there
were none.   On June 26, 1895, Michael Wynn, one of the
pushers, with his men, went to their work in the shaft,
cleaned up and hoisted the loose dirt therein, found two
missed holes filled with powder, and several "pot holes,"
—holes that had been blasted, but the powder failed to
break the ground and rock to the full depth of the holes.
Wynn, the pusher, went out of the shaft for powder and

fuse with which to blast these holes. When he arrived on top he met James Quinn, the foreman, overseer, and manager of the mine, who directed him to let the holes go and not blast them, and to put his men at other work, which he did. Wynn and his men, and the succeeding shift, the shift with which plaintiff worked, did not resume work in the shaft until the following day, the day on which plaintiff was injured. In the meantime these missed shots and pot holes were not blasted, and no report was made of them, either by Wynn or Quinn, to the shift that first resumed work in the shaft after Quinn's attention had been called to its dangerous condition by Wynn, or to the pusher under whom plaintiff worked. When plaintiff and the men with whom he was working returned to the shaft, they found that the preceding shift had drilled 11 holes, and the drilling machines were in position for drilling, and that there was nothing in the appearance of the bottom of the shaft that indicated to them that there were any missed shots or dangerous holes of any kind concealed and imbedded therein. While the plaintiff was attempting to start a hole with one of the power drills, the drill slipped into one containing powder—a missed or pot hole—that had been left and not reported, and caused an explosion, inflicting on him the injuries complained of.

It is claimed by defendant that Pusher Wynn called Foreman Quinn's attention to pot holes only, and that this class of holes contain no powder, hence are harmless, and therefore it was not notice to the defendant of the dangerous condition of the shaft. We think, however, that the evidence shows that pot holes are dangerous. Foreman Quinn, a witness for the defendant, testified on this point as follows: "Pushers ought to look out for holes when they are starting a hole. When they are

drilling, it is the duty of the man in charge of the shift, and all the men for their own safety, to look out always where they are starting a hole, because you can't tell what is in the bottom of a shaft. * * * For his own safety a man has to look out for these pot holes,—from an old hole that was blasted before. * * * It is best for him to do that, and not put a drill into it without looking around." James Johnson, another of defendant's witnesses, testified as follows: "We generally try never to start a hole where there has been a prior shot, without picking down and examining it closely to see if there is any powder in it." Michael Malia, a pusher, and another of defendant's witnesses, testified: "I have seen that, when we have got the full number of shots, enough powder was left in a hole to be dangerous. * * * Never set a drill where an old shot has been, if I can help it. * * * The reason for trying to set the drill away from where an old shot was is that powder is known to explode and leave powder in the bottom. For that reason a man has to be careful, even if he gets all his reports."

The question as to whether or not Foreman Quinn had notice of the dangerous condition of the shaft, at and prior to the time of the explosion that injured plaintiff, is a question of fact that was entirely within the province of the jury to decide; and, as there is evidence to support a finding by the jury that the condition of the shaft, as reported by Pusher Wynn to Foreman Quinn, was dangerous, and that the defendant had sufficient notice thereof, but neglected and failed to put the shaft in a reasonably safe condition, and to take reasonable precaution to avoid accidents to its laborers working therein, this court cannot consider this feature of the case, for the purpose of determining whether the weight of the evidence on this point is in favor of or against the defendant.

Quinn having taken Wynn and his men away from their work in the bottom of the shaft at the time his attention was called to its dangerous condition, and put them at other work without first permitting them to put it in a safe condition for the succeeding shifts, took upon himself all the duties that Wynn, as pusher, might otherwise have been under to report the dangerous condition of the shaft to the oncoming pusher and the pusher who resumed work therein, and, failing to make such report, he was guilty of negligence, and the defendant thereby became liable for any injury plaintiff received by reason of such failure.

Defendant further contends that plaintiff was guilty of contributory negligence in not making an examination of the rock and grounds before starting the hole where he was drilling at the time the explosion occurred that injured him. It is conceded that the work in the shaft was more dangerous and hazardous than ordinary mining, and because of this the men working therein were paid more per day than they received for working elsewhere in the mine. Plaintiff, at the time he was injured, was inexperienced in the labor required of him in the shaft. He had never worked in a shaft before going to work in the one referred to, and this was his second day with power drills. On this point he testified, in substance, that he did not know and was not informed of the necessity of examining the rock and ground in the bottom of the shaft for holes, before starting the drills, when no report was made of missed shots. This inexperience and lack of knowledge on the part of the plaintiff was known to Quinn, defendant's foreman, yet he (Quinn) failed to inform plaintiff of the precautions necessary for him to take in order to avoid accidents by the explosion of missed or hidden shots that might be imbedded and

concealed in the bottom of the shaft. It is a duty a master owes to his servant to inform and point out to him the latent dangers, or those not exposed or discernible, incident to the work to be performed by the servant, when such dangers are known to the master, and of which the servant is ignorant, by reason of the inexperience on his part, and he could not know and understand unless pointed out to him. Bailey, Mast. Liab. p. 111. And where the master has knowledge of the risks and dangers not discernible that are incident to the work to be performed by a servant, and he is also aware of the servant's inexperience, and fails to inform him of the precautions and care necessary for him to take in order to avoid injury, and the servant is injured without any negligence on his part, the master will not be permitted to exonerate himself from liability by showing that the servant failed to exercise the same degree of skill to avoid injury as his more experienced fellow workmen; and especially is this true where the dangers and risks of the employment are greatly augmented and increased by the negligence of the master, as they were in this case, as shown by the evidence. *Gates* v. *State*, 128 N. Y. 22; *Trihay* v. *Mining Co.*, 4 Utah 68; *Timber Co.* v. *Mooney*, (Ariz.) 33 Pac. 590; *Roth* v. *Lumbering Co.*, 18 Or. 205.

It further appears, from the evidence, that the shift with which plaintiff worked did not return to work in the bottom of the shaft, after Quinn's attention had been called to its dangerous condition, until the time of the explosion that injured plaintiff, and when he went to work on that day he found that the preceding shift had drilled 11 holes, and left the drilling machine in position for drilling; hence he was justified in assuming that the bottom of the shaft was in a safe condition for running the drills, as is conceded was the custom of the men who

were working in this shaft, when they found the drilling machines in position upon going to work.  The question of negligence on the part of the defendant and the question of contributory negligence on the part of the plaintiff were questions of fact for the jury to decide, and, these issues having been fairly submitted to the jury, and the jury having found in favor of the plaintiff, this court will not disturb the verdict, as the record shows there is evidence to support it.  *Reddon* v. *Railway Co.*, 5 Utah 344; *Seley* v. *Pacific Co.*, 6 Utah 319; *Andreson* v. *Depot Co.*, 8 Utah 128; *Woods* v. *Railway Co.*, 9 Utah 146; *Smith* v. *Railway Co.*, 9 Utah 144; *Chapman* v. *Southern Pacific Co.*, 12 Utah 30.

Appellant complains of and assigns as error the giving of certain instructions by the court to the jury, and of the court's refusal to give certain instructions asked by defendant.  We have carefully examined the instructions given in the case, and we are of the opinion that they contain a correct statement of the law applicable to the facts in the case, and are as favorable to the defendant as the facts warrant.

There are several other assignments of error, but as counsel for the appellant did not refer to the questions raised by these assignments in their oral discussion of the case before this court, and have not referred to them in their brief, we deem it unnecessary to consider them. We find no reversible error in the record; therefore, the judgment is affirmed.

BARTCH and MINER, JJ., concur.