BYRON R. MOYES, a Minor, by STEWART H.
MOYES, His Guardian Ad Litem, Respondent, v.
THE OGDEN SEWER PIPE & CLAY COM-
PANY, a Corporation, Appellant.

### No. 1561.    (77 Pac. 610.)

1. **Master and Servant: Injury to Servant: Negligence
Contributory Negligence: Question for Jury.**
  Plaintiff, a boy 14 years of age, the day after he started to
  work in a sewer pipe factory, was placed at work at a clay
  hopper. He was required to notify another servant to
  start the machinery when desired, which was done by pull-
  ing a bell cord. The bell was located directly under the
  hopper, and was accidentally rung on some occasions by
  pieces of clay falling through an open space in the floor.
  There was a conflict in the evidence as to whether plaintiff
  had received instructions as to the manner of doing the
  work. While he was cleaning clay from the plunger, the
  bell rang by accident, when the plunger was caused to de-
  scend, and amputated plaintiff's arm. *Held*, that defend-
  ant's negligence in permitting the bell to be exposed and
  in failing to warn plaintiff and plaintiff's contributory neg-
  ligence were for the jury.[1]

2. **Same: Assumption of Risk: Question for Jury.**
  Plaintiff did not assume the risk of injury under such circum-
  stances as a matter of law; but whether he was justified
  in assuming that his employer expected him to use his
  hands to clean the plunger, no other tools having been
  furnished for that purpose, was for the jury.

### (Decided June 30, 1904.)

Appeal from the Second District Court, Weber County.
—*Hon. H. H. Rolapp,* Judge.

---

[1] Young v. Clark, 16 Utah 42, 50 Pac. 832; Anderson v. Daly
Min. Co., 15 Utah 22, 49 Pac. 126.

Action to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*C. S. Varian, Esq.,* for appellant.

By instructions 13, 15 and 17 the court charged the jury that it was the duty of the master to instruct young and inexperienced servants only concerning dangers in the employment which were known, or ought to have been known, to the master in the exercise of ordinary care and prudence, and of which the servant, by reason of his youth and inexperience, was ignorant, and which he could not reasonably be expected to discover in the exercise of ordinary care on his part; that masters who employ young persons to work with dangerous machinery should anticipate that they would exercise only such judgment, discretion and care as is usual among persons of the same age under similar circumstances, and that it was the duty of the master to instruct such employees as to dangers which, because of the youth and inexperience of the servant, the master, in the exercise of ordinary care, might reasonably anticipate the servant would not apprehend or appreciate; that, as to the alleged inexperience and immaturity of the plaintiff in this case, in order to charge the defendant with negligence on the ground of failure to warn and instruct the plaintiff as to the dangers connected with his employment, as specified in the amended complaint, it must appear that the defendant knew, or by the exercise of reasonable care and observation, might have known, of the inexperience, disqualification and immaturity of the plaintiff; and, further, that this fact must be proven by the plaintiff by a preponderance of the evidence; that, in the absence of the evidence of the defendant's knowledge, or the fact that by the exercise of

reasonable care it might have had the knowledge of the in-
experience, disqualification and immaturity of the plain-
tiff as relating to his employment the jury could not
rely upon inference, conjecture or their personal ex-
perience; that the plaintiff must prove, not only that
he was inexperienced and immature in age and unac-
quainted with the machinery and therefore required
instructions, but also that the defendant knew, or by
the exercise of reasonable care and observation, might
have known, of such inexperience, immaturity and dis-
qualification.

Now, these instructions lead the jury directly to
the question of danger known or to be reasonably ap-
prehended in the course of the employment of the plain-
tiff. They are predicated solely upon the theory of
plaintiff that it was a duty of his employment to keep
the clay pot free from clay. They do not embrace the
question sharply made by the pleadings and in the evi-
dence, that the danger which, in fact, did overtake the
plaintiff, was not an incident to his employment, and
might not have been reasonably anticipated by the de-
fendant, and as they stand, state propositions of law
which are applicable to but a part of the case made in
the evidence. If it was no part of the duty of the plain-
tiff in the course of his employment to leave the place
prepared for him to do his work, and undertake to re-
move the clay from between the tile press and the plun-
ger, and if the defendant, in the exercise of ordinary
care and prudence in the employment of the plaintiff
believed that the plaintiff was qualified and fitted for
the particular work given him to do, and had no reason
to believe otherwise, and could not reasonably have been
expected to anticipate that one of the plaintiff's age,
experience and apparent intelligence and judgment
would have undertaken to do what he did while the ma-
chine was in service, can it be affirmed that the law, not-
withstanding, would still hold the defendant liable for
the consequences? All of these matters were supported

by evidence on behalf of the defendant, and indeed, find corroboration in the evidence for the plaintiff.

In this state of the case, in order that the matter should be submitted fairly to the jury, the defendant had a right to have the charge expanded with some particularity upon these questions.

It therefore presented by request to charge numbers 10-15-20 (next hereinafter set out), the law applicable to the case upon the theory as above, but the court declined so to charge, and in this particular we think committed a grave and prejudicial error.

"10. If you find, in this case, that the age, intelligence and experience of the plaintiff were such as to induce the defendant, exercising ordinary care and prudence in employing plaintiff to believe him qualified and fitted for the work in which he was employed in and about the feeder of the tile press, and that the defendant, exercising ordinary care and prudence in the employment of the plaintiff, and having no reason to believe otherwise, did believe that the plaintiff was qualified and fitted for the said work, and that the defendant could not reasonably be expected to anticipate that a body of plaintiff's age, experience and apparent intelligence and judgment would undertake to remove the clay from the top of the press with his hand, while the machine was in service, you can not find for plaintiff on the ground that there was a failure to instruct and warn plaintiff in the premises, but must look further for some other negligence on the part of the defendant, alleged in the amended complaint, before you can find a verdict for the plaintiff."

"15. If you find that the plaintiff had the intelligence, capacity and judgment ordinarily possessed by boys of his age, and that an ordinarily prudent boy of that age, in a like employment and possessing the same experience as did the plaintiff, would have appreciated the danger and risk of intruding his arm underneath the plunger to remove the clay, and that there was no necessity or requirement in the service of plain-

tiff, that he should intrude his arm and hand between the plunger and the press, to remove the clay, and that this would have been apparent to an ordinarily prudent boy of his age, experience, capacity and intelligence, under like circumstances, then you are instructed to find for the defendant.''

"20.  If you find from the evidence that it was no part of the duty of the plaintiff, in his employment, to remove the clay from between the plunger and the top of the cylinder press with his hand and arm, and that he was acquainted with the methods of feeding the clay and operating the plunger and the tile press, and had sufficient intelligence, capacity, experience and judgment to appreciate the risk of intruding his hand and arm between the plunger and the tile press to remove the clay, but that, notwithstanding, upon the occasion of the accident, he undertook to remove the clay with his hand, and for that purpose, intruded his arm between the press and the plunger, and that, while so engaged, he himself pressed his body or limb against the wire connecting with the gong or bell, and thereby caused the same to be rung and give the signal to the pressman, who acted thereon causing the plunger to descend, resulting in the injury whereby the plaintiff lost his arm; and that but for such attempt on the part of the plaintiff to remove the clay with his arm and hand he would not have caused the said signal to be given and the said accident would not have happened, you are instructed that such acts on the part of the plaintiff would constitute negligence, contributing directly to the injury, and in such case the plaintiff cannot recover, and you must find for the defendant.''

It is to be observed that the tile press and plunger were not necessarily dangerous appliances in themselves; they were the ordinary machinery employed in the business of the defendant and necessary to the service; they concealed no peril to life or limb, and involved no danger not open to the observation of all. If the

act of the plaintiff was not required by his employment, nor any part of his duty in the service, the defendant could hardly be expected to give instructions concerning it, and not being required as a duty of the employment, if a reasonably prudent man in the situation of the defendant could not reasonably be expected to anticipate the act of the plaintiff, or to apprehend that the plaintiff would even undertake to do what he did, no duty rested upon the defendant to give warning. It seems to us that argument can add nothing to the simple statement of these propositions. Jorgenson v. Jorgenson Chair Co., 67 Ill. App. 80; Eckles v. Chicago Shipbldg. Co., 63 Ill. App. 436; McCallum v. McCallum, 58 Minn. 288, 59 N. W. 1019.

"In estimating the extent of the master's liability the essential point to be settled is not whether he knew that certain conditions existed, but whether he knew that those conditions involved dangers to the servant." 1 Labatt, Master and Servant, p. 260.

And again, the same author remarks upon the question of the duty to instruct and warn servants: "The propriety of refusing to predicate a breach of the duty to warn a servant of a danger in a case where no notice of the existence of that danger can be imputed to the master or his representative results from the very nature of this duty." Labatt, supra, pp. 272, 525, 526, 527.

In another case it is stated: "An essential element of negligence is a knowledge of facts which render foresight possible, and the circumstances necessary to be known before the liability for the consequence of an act or omission would be imposed must be such as would lead a prudent man to apprehend danger." Gibson v. Pacific R. R. Co., 46 Mo. 163, 2 Am. Rep. 49; Hope v. Fall Brook Coal Co., 38 N. Y. Supp. 1040.

"Where there is no knowledge of facts which would lead to an apprehension of danger, there can be no imputation of foresight or blameworthiness, and these two ingredients are necessary to constitute negligence."

Hope v. Fall Brook Coal Co., 38 N. Y. Supp. 1040; Mc-Nish v. Peekskill, 36 N. Y. Supp. 1022.

It is not negligence to fail to provide against an accident that foresight and prudence could not have anticipated the necessity of guarding against. After an accident has occurred, it may be easy to see what would have prevented it, but that of itself does not prove, nor tend to prove, that reasonable or ordinary care would have anticipated and provided against it. Labatt, supra, pp. 303, 527; Turner v. Goldsboro Lumber Co., 119 N. C. 387, 26 S. E. 23; Glover v. Kansas City Nut & Bolt Co., 55 S. W. 88-92; Neff v. Broom, 70 Ga. 256.

As to the presumption that plaintiff was *sui juris.* The court charged the jury, by instruction 3, at the request of defendant that the law presumed plaintiff, being of the age of fourteen years and upwards, to have possessed the intelligence, experience, capacity and judgment usual in boys of that age. By the same request, No. 11, the defendant asked the court to charge in addition, ''and to have had sufficient capacity to be sensible of obvious danger and to have had the power to avoid it, and these presumptions remain until overthrown by evidence that he lacked such intelligence, capacity and judgment as are usual in boys of his age, or that he lacked the capacity to be sensible of obvious danger and did not have the power to avoid it; and the burden of proof as to these is upon the plaintiff to overcome the presumptions aforesaid by showing that the plaintiff lacked the intelligence, capacity or judgment usual in boys of his age and the capacity to be sensible of danger and the power to avoid it.''

Under our law a boy of fourteen years is *sui juris.* At the age of fourteen the law changes the presumption of capacity and puts upon the infant the burden of showing his personal want of intelligence, etc., usual in youths of his age. He is held to the same measure of discretion as is usual to those of his age and experience, in absence of clear evidence of the lack of it. At the common law he could make a will and contract marriage,

and it has been said that one ceases to be a child presumptively at the age of fourteen. Baily v. State (Tex. App.), 51 Am. Rep. 292.

"At the age of fourteen every person is presumed to have common discretion and understanding until the contrary appears." 1 Greenleaf on Evidence, sec. 367.

By the statutes of the state a boy of fourteen may nominate a guardian. R. S., sec. 3995.

May commit crime. R. S., sec. 4071.

May control and withdraw deposits in banks. R. S., sec. 381.

May give bond to appear as a witness. R. S., sec. 4683.

May work in underground mines and smelters. R. S., sec. 1338; Constitution, art. 16, sec. 3.

Is not required to attend school. R. S., sec. 1962.

A female of that age may marry. R. S., secs. 1190-1184.

Unless idle, vicious or vagrant, must consent to being bound as an apprentice. R. S., sec. 74.

Service of summons may be made upon. R. S., sec. 2948, paragraph 6.

An infant of the age of fourteen years is presumed to have sufficient capacity to be sensible of danger and to have the power to avoid it, and this presumption will stand until overthrown by clear proof of the absence of such discretion as is usual with infants of that age. 2 Bailey, Master and Servant, sec. 2769; Nagle v. Alleghany R. R. Co., 88 Pa. St. 35, 37 Am. R. 413; Tucker v. New York Cent. R. R. Co., 124 N. Y. 308, 26 N. E. 916; Kaehler v. Schwenk, 14 Pa. St. 359, 22 Atl. 910; Sanborn v. R. R. Co., 35 Kan. 292, 10 Pac. 860; Kiemann v. Kinair, 190 Ill.—, 60 N. E. 215; White v. Witteman Lit. Co., 131 N. Y. 631, 30 N. E. 236.

In Nagle v. Alleghany R. R. Co., supra, the court said: It, therefore, requires no strain to hold that at fourteen an infant is presumed to have sufficient capacity and understanding to be sensible of danger and to have the power to avoid it; and this presumption ought

to stand until it is overthrown by a clear proof of the absence of such discretion and intelligence as is usual in infants of fourteen years of age.''

In Tucker v. New York Central R. R. Co., supra, where the plaintiff's intestate, a boy twelve years of age, while crossing a railroad track was struck by a train, in speaking to the question of this presumption, the court said: ''This presumption may, in a proper case, be so far overborne by evidence as to present a question for the jury, and then the age of the injured party may doubtless be considered by the jury in connection with the facts indicating a lack of appreciation of the dangerous situation. But, in the absence of evidence tending to show that an injured infant twelve years old was not qualified to understand the danger and appreciate the necessity for observing that degree of caution in crossing a railroad track which an adult would, he must be deemed *sui juris*.''

It is to be observed that no contention is made that such presumption is conclusive. By its request, the defendant only sought to have the court convey to the jury the presumption of law as to the capacity and discretion of a boy of plaintiff's age, of which otherwise, the jury would have no knowledge. As shown by the text-writers and the decisions of the courts, the presumption of capacity attaches to a boy of plaintiff's age as a matter of law, and the legislation of our own State has clearly adopted the age of fourteen as the age when such a presumption may reasonably be applied. It would be strange, indeed, if the law would send a boy of fourteen to the penitentiary for life, or to the gallows, for the commission of a crime upon a verdict based upon a presumption of capacity, and in a civil case would deny that such a one was presumed to have the ordinary faculties of one of his years, and to be sensible of danger and to have the power to avoid it.

*Messrs. Henderson & Macmillan* for respondent.

McCARTY, J.—Byron R. Moyes, the plaintiff, was injured while in the service of the defendant company on the thirteenth of March, 1903, by losing his left arm at the elbow. In his action for damages for said injury a verdict of $4,000 was rendered, and judgment thereon entered. From said judgment this appeal is taken.

The allegations of negligence in plaintiff's complaint upon which he relies for a recovery are as follows: "Plaintiff further alleges that the bell that he was supposed to ring in order to give the signal to let the plunger descend was worn out, old, cracked, and that said bell was placed immediately under and below the hopper that he was attending to, and that said bell was wholly unprotected, so that clay could and would fall from the table of the hopper upon said bell, and would cause said bell to make a sound as though the cord of bell had been pulled; all of which was, or by the use of reasonable diligence could have been, known to defendant, and was unknown to plaintiff. Plaintiff further alleges that the defendant was guilty of negligence and carelessness in this, to-wit: That defendant failed to give plaintiff any or proper instructions how to operate said sewer pipe machine, or how to clean and keep said hopper free from dry clay or any hard substances, and failed to warn said plaintiff of the danger of said machine and to keep his hands and arms out of said hopper and from under said plunger, and in keeping the said bell properly or at all protected, and in causing said plunger to descend without giving any warning to plaintiff, and that by reason of said negligence and carelessness of defendant as aforesaid, and without any fault or carelessness on the part of plaintiff, he has lost his left arm as aforesaid, and will be injured, maimed, and crippled throughout his life; and that by reason thereof said plaintiff has been made sick and sore and distressed in mind and body, and will ever be so—all to his damage in the sum of $20,000." Defendant, by its answer, denies that it was guilty of any negligence that caused, or in any way contributed to, the injury upon which the

action is based; and alleges contributory negligence on the part of plaintiff, and that he assumed the risk and hazards of the employment.

It appears from the record that the plaintiff was employed by the defendant company to work in its factory, a building of three stories, in which sewer pipe was being manufactured. Plaintiff, who at the time was fourteen years of age, bright and intelligent, commenced work at noon on March 11, 1903, and worked until noon the following day (March 12th) sifting sand and doing odd jobs about the factory, on the ground floor thereof. A few minutes before it was time to start the factory running at the noon hour on the date last mentioned, Hemle, a boy who was in the employ of the defendant attending the feeder of the tile press on the third floor of the factory, came to plaintiff, and asked him if he would change jobs. Plaintiff answered that he would provided Hutto, the foreman, would consent. Hutto gave his consent, and the boys changed work. Plaintiff testified that Hutto then went with him to the third floor, where the feeder and the tile press were, and said to him, "You must keep all the clay away from the machinery." Hutto, however, testified that he did not go with plaintiff on the occasion referred to. Neither did he give him any instructions respecting his (plaintiff's) work. The clay used for making tile was brought by "cup" elevator from the ground floor to where plaintiff last went to work, and was discharged on a belt, termed the "slow feeder belt," thence onto a fast feeder belt, which delivered the clay into a steel pot or cylinder (called "hopper" in the complaint), and there molded into sewer pipe. When the "pot" or "hopper" was filled with clay, the discharge of clay from the fast feeder belt was shut off, and a signal given by plaintiff to the pressman, who stood at the lever on the floor below, to let the steam on and start the plunger down to press the clay for the purpose of fashioning or molding it into sewer pipe. The feeder belts ran in wooden boxes elevated about four feet from the floor. These

boxes ran east and west, and there was a platform for the operator's (plaintiff's) use along the south from the west end fourteen feet to the tile press. At the west end (fourteen feet from the tile press) was a seat for the operator, with levers at his hand to regulate the action of the feeder belts. There were also signal cords communicating with the ground floor to regulate the clay coming up and with the pressman to set the plunger in motion when signaled so to do by plaintiff. Immediately in front of the tile press there was an open space in the floor from eighteen inches to three feet in width, and it was shown by tests made by certain of the witnesses that pieces of partially dried clay falling through this open space would occasionally strike the bell which was used to signal the pressman to set the plunger in motion, causing a ring similar to that created by pulling the bell cord. William McGregor, a witness called by the defense, testified that he worked in the immediate vicinity of the bell, and had on several occasions observed pieces of clay, which had fallen through the open space mentioned, strike the bell. The feeder belts would sometimes get clogged with clay, and the plaintiff would clean them off, which was a part of his duties. As stated by one of defendant's witnesses in his testimony, "If the clay accumulated on top of the plunger so that it went up high enough, he would have to push it off." On the afternoon of the second day that plaintiff was at work in the factory, while he was in the act of cleaning the partially dry clay from the tile press, the plunger, without any warning, came down, and cut his arm off at the elbow. On this point the plaintiff testified in part as follows: "When hurt I had left the chair, and was standing on the floor cleaning in back of this sheet iron. The seat is elevated about three feet from the floor. I went over to clean the clay, and put my hand in as far back as I could reach. I was pushing the clay down into the press. I put my hand in to clean it out so that it wouldn't get dry and fall down and spoil the tile. The plunger came down, and cut my arm at the elbow joint,

leaving my hand in the place where the plunger goes.''
And again: ''Before the accident I had cleaned out
from under the plunger about six or seven times. . . .
The plunger never came down before I rang the bell.
I did not expect it to come down until I rang the bell.
I did not ring the bell. I was twelve or fourteen feet
away from the place where I used to ring the bell.'' The
clear preponderance of the evidence shows that neither
Hutto, the foreman, nor any other person gave plaintiff
instructions respecting the manner in which he was to
clean the clay from the tile press. Nor was he warned
of the danger of cleaning away the clay referred to with
his hands, there being no tools at his disposal except
a hoe, which was not suitable for that purpose. Plain-
tiff testified on this point as follows: ''I had never
worked around machinery before, and had worked on
this machine but one day. I had seen the machine oper-
ated once or twice before I was hurt, but had never seen
it cleaned out. When I saw the machine working, it was
for a minute or two. No one warned me about the dan-
ger of putting my hand in there. I did not know it was
dangerous.'' Hutto, the foreman, was called as a wit-
ness by defendant, and testified: ''Well, I never con-
sidered there was any danger to it [the tile press]. I
didn't warn him [referring to plaintiff]. I never paid
any particular attention to him.'' When the evidence
was all in, and both parties had rested their case, the
defendant requested the court to peremptorily instruct
the jury to return a verdict for defendant. The refusal
of the court to so instruct is now assigned as error.

Appellant contends that the dangers and hazards
incident to the employment in which plaintiff was en-
gaged were so open, plain, and obvious that a person
of the age and intelligence which the evidence shows
plaintiff to be would, by the exercise of ordinary
care, have understood and appreciated them; and,
further, that plaintiff's means of knowing and under-
standing the hazards of the employment were equal to
those of his employer, and that he assumed the risks and

Moyes v. Ogden Sewer Pipe & Clay Co.

dangers to which he was exposed. It appears from the record that plaintiff was the only person authorized and whose duty it was to give signals for the plunger to descend, and it is evident that, if the bell had not been rung by accident—which the evidence tends to show was caused by pieces of clay falling through an open space in the floor immediately in front of the tile press and striking the bell, which was in an exposed condition almost directly under the opening in the floor—the injury to plaintiff would not have occurred. In determining the question of negligence on the part of defendant and that of contributory negligence on the part of plaintiff, the exposed position of the signal bell with reference to the falling clay, the youth of plaintiff, and his inexperience in the handling and running of machinery, and the question as to whether or not, under the circumstances, it was the duty of defendant to warn him of the dangers and hazards of the employment, were proper matters for the consideration of the jury, under proper instructions from the court. Young v. Clark, 16 Utah 42, 50 Pac. 832; Anderson v. Daly Min. Co., 15 Utah 22, 49 Pac. 126; Bailey, Mast. Liabil., 116, 117; Chopin v. Badger Paper Co., 83 Wis. 192, 53 N. W. 452; Wynne v. Conklin, 86 Ga. 40, 12 S. E. 183; Taylor v. Wootan, 1 Ind. App. 188, 27 N. E. 502, 50 Am. St. Rep. 200.

The contention of appellant that the opportunities of plaintiff for knowing and understanding the risks and dangers of the employment were equal to those of the defendant, and that plaintiff thereby assumed the risks, and that the court, as a matter of law, should have so found, is not supported by the record, which shows that plaintiff was young and inexperienced, and there is a conflict in the evidence as to whether he received instructions from any source respecting the manner or way in which he should perform the work. The preponderance of the evidence, however, is that he received no instructions. There is evidence in the record

tending to show that he received general instructions to keep the excess or accumulations of clay away from the tile press, but that no specific instructions were given him as to how he should do this, and that there were no tools at his disposal suitable for that purpose. Under these circumstances, and in view of his youth and inexperience, it was a question for the jury to determine as to whether or not he was not justified in assuming that his employer expected him to use his hands for that purpose.

Appellant assigns as error the giving of certain instructions and the refusal of the court to give certain instructions asked for by appellant. The instructions cover nearly 20 pages of the abstract, and are therefore too voluminous to set forth in this opinion. We have however, made a careful examination of them, and find that the court carefully and elaborately covered all the issues, and that the instructions, as a whole, are as favorable to the defendant as the facts in the case warrant. We find no reversible error in the record.

The judgment is affirmed, with costs.

BASKIN, C. J., and BARTCH, J., concur.