# GEO. W. BUDD, Respondent, v. SALT LAKE CITY R. CO., Appellant.

PERSONAL INJURIES—COLLISIONS—PASSENGERS—EXCESSIVE DAMAGES—APPEAL AND ERROR—EXPERT WITNESSES AND TESTIMONY.

1. Where, in an action for personal injuries, there is a conflict of testimony as to what extent the plaintiff was injured in the collision, a verdict will not be set aside as excessive, since the question of damages is exclusively for the jury.

2. Where, in an action for injuries, a physician, after testifying to his professional qualifications, testified, without objection, respecting the plaintiff's injuries, disease, and condition, it was not an abuse of discretion to permit him to give his opinion as to what percentage of patients with such affliction ultimately recover their health.

3.  Such evidence was admissible, since it had a direct bearing on the permanency of the disease which plaintiff claimed resulted from the injuries.

4.  Such expert witness having testified as to the condition of the plaintiff, it was not error to permit him to testify as to how long a person, under similar conditions, would probably suffer and be unable to work.

### Decided June 10, 1901.

Appeal from District Court, Salt Lake County.—*Hon. A. N. Cherry,* Judge.

Action by George H. Budd against the Salt Lake City Railroad Company. From a judgment in favor of the plaintiff, and an order overruling a motion for a new trial, defendant appeals.

AFFIRMED.

*Messrs. Pierce, Critchlow & Barrette* for appellant.

*Messrs. Ferguson, Cannon & Tanner* for respondent.

BARTCH, J.—The plaintiff brought this action to recover damages for personal injuries which he claims he received through the negligence of the defendant. He alleges in his complaint, substantially, that on July 25, 1900, while he was traveling on one of defendant's street cars as a passenger, on a certain street in Salt Lake City, the car on which he was riding collided with another through the negligent and careless management of the company's servants; that by the collision he was thrown from his seat, and struck with his back against the car, and was thereby bruised, wounded, and injured, so that he became sick and sore internally and disabled permanently; and that ever since he has been, and for a long

time to come will be, unable to attend to his business. In its answer the defendant admitted the collision, that the same was caused by the negligence and carelessness of its servants in managing the cars, and that the plaintiff was at the time a passenger on the car, but denied that he was injured by the collision. Under the pleadings the main issue was simply as to whether or not the plaintiff was injured, and, if so, to what extent, because of the collision. As to this issue, the plaintiff, at the trial, among other things, testified, in substance, that he was sitting on a seat in the car at the left of the motorman; that when the cars collided he was thrown from his seat, and struck with the small of his back against the upper edge of the motor box with such force that it threw him back over the seat on which he had been sitting; that he then went home; that he suffered that night from injuries he had received at the time of the accident, and has continued to suffer ever since; that he feels a numbness in his back and up his spine, has pains through his body, his legs, and shoulders, suffers with headache, feels a dizziness, seems to have black specks floating before his eyes, has lost his appetite, is unable to sleep, and is generally sick; that prior to the accident he was well and hearty, and could work every day, but since then he has been unable to work, and when he does work he soon becomes exhausted and has to quit; that just before the injury he weighed 147 pounds, but shortly after only 125; that up to that time, and since he was a boy nine or ten years old, his health was always good, and he had no occasion to consult a physician concerning his personal health; and that he had none of his present ailments before the accident. In many important particulars the above testimony is corroborated by that of other witnesses, and the record contains other evidence of a similar character, from which it also appears that his back was considerably bruised. The witness Anderson, a physician, who examined the injured, in part testified: "On

examination of the body, I found over the back superficial
bruises which were beginning to disappear. On pressure, how-
ever, over the spinal column, I found tenderness over the
upper dorsal and lower lumbar regions. His facial expres-
sion, as he came in, showed a careworn, melancholy appear-
ance. He sat down in a stiff posture, resting his arms to sup-
port himself, all of which had a certain degree of significance.
The examination of the eyes showed a considerable diminution
of the field of vision. The knee jerks were not equal—one
was greater than the other. On testing the sensation, I found
over his back certain areas where he could not distinguish the
difference between the head and the point of a pin, given a
moderate pressure. In regard to the circulation, I found that
extremely sensitive to fatigue. Having him walk to the bot-
tom of my steps and back, about twenty steps, would almost
double the pulse rate. He would come back freely perspir-
ing, something which would not happen to any ordinary man.
These, with certain subjective symptoms which I was able to
elicit, constituted my examination. The examination of the
heart showed no abnormal symptoms. The examination of
the urine showed no kidney disease. The examination of the
stomach's contents at a later time showed the stomach to have
the usual ferments and acids. By pressure over the tender
areas of the spine, the pulse rate could be markedly increased."
In conflict with a part of the foregoing testimony is some in-
troduced by the defendant, principally that of the witness
Oglesby, to the effect that the plaintiff was afflicted with his
present ailments, and which constituted the injuries com-
plained of, before the happening of the accident. At the
trial the jury returned a verdict in favor of the plaintiff for
$2,500 and for costs, and judgment was entered accordingly.
A motion for a new trial was then made and overruled.

It is contended that the court erred in not setting aside
the verdict of the jury as being excessive, and having been

rendered under the influence of passion or prejudice. This contention can not avail the appellant. As may be seen from the evidence above referred to and from other testimony in the record, there is a conflict as to what extent the plaintiff was injured by the collision, or on the point as to whether he was afflicted with his present ailments before the collision occurred. The question of damages for such injuries was therefore exclusively within the province of the trial court and jury, this being a case at law, and under such circumstances we have not power to interfere with the verdict upon the ground that it is excessive.

In such a case, where, as here, there is evidence in support of the verdict, we are conclusively bound by the judgment of the trial court and jury on the question of damages, as well as on any other question of fact. It has been repeatedly so held by this court, and it is no longer an open question in this State. It is therefore useless to longer incumber the records with such questions in such cases. This court will not interfere with the verdict of a jury, unless there is no legitimate proof to support it. Mangum v. Mining Co., 15 Utah 534, 50 Pac. 834; Nelson v. Southern Pac. Co., 15 Utah 325, 49 Pac. 644; Anderson v. Mining Co., 15 Utah 22, 49 Pac. 126; Murray v. Railroad Co., 16 Utah 356, 52 Pac. 596; Harrington v. Mining Co., 17 Utah 300, 53 Pac. 737; Stoll v. Mining Co., 19 Utah 271, 57 Pac. 295; State v. Endsley, 19 Utah 478, 57 Pac. 430; Smith v. Droubay, 20 Utah 443, 58 Pac. 1112.

It is also insisted for the appellant that the court erred in permitting the witness Dr. Anderson to give his opinion as to what per cent. of the people afflicted, as the plaintiff is, with nervous prostration or neurasthenia, recover permanently. The objection to this testimony was based on the ground that the witness was not shown to be competent to give such an opinion. As to whether or not a witness is com-

petent to testify as an expert is a question of fact, within the sound discretion of the trial judge, and his determination will not be reviewed or disturbed, unless a palpable abuse of discretion is disclosed. State v. Webb, 18 Utah 441, 56 Pac. 159. In this case no such abuse is shown in the record.

After having testified as to his professional qualifications and experience, the witness was permitted to testify, without objection, as appears, respecting the plaintiff's injuries, disease, and condition, and having so testified, the court did not err in permitting him to give his opinion as to what percentage of such patients ultimately recover their health, since this had a direct bearing upon the permanency of the disease, which it was claimed resulted from the injuries. Cole v. Railway Co., 95 Mich. 77, 54 N. W. 638; McClain v. Railroad Co., 116 N. Y. 459, 22 N. E. 1062; Railroad Co. v. Crist, 116 Ind. 446, 19 N. E. 310, 2 L. R. A. 450, 9 Am. St. Rep. 865; Mangum v Mining Co., 15 Utah 534, 50 Pac. 834; Railway Co. v. Burnett, 80 Tex. 536, 16 S. W. 320; Railroad Co. v. Latimer, 128 Ill. 163, 21 N. E. 7; Hammond v. Woodman, 66 Am. Dec. 219, 234.

Nor did the court err in permitting the expert witness to testify as to how long a person under similar conditions would probably suffer and be unable to work. It was clearly competent for the witness to so testify, having already testified to the condition of the injured. Abbot v. Dwinnell, 74 Wis. 514, 43 N. W. 496; Hammond v. Woodman, 66 Am. Dec. 235. It is not deemed important to discuss any other question presented. We find no prejudicial error in the record. The judgment is affirmed, with costs.

*Miner, C. J.,* and *Baskin, J.,* concur.