ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* JACKSON.

Opinion delivered June 7, 1909.

1. RAILROADS—PERSONAL INJURY—CONTRIBUTORY NEGLIGENCE.—Where the undisputed evidence shows that plaintiff was hurt while negligently walking near defendant's track without noticing an approaching train when there was no reason why his attention should be attracted elsewhere, he was guilty of contributory negligence as matter of law, and it was error to submit the question whether he was negligent to the jury. (Page 18.)

2. SAME—DISCOVERED PERIL.—Where there was testimony tending to prove that defendant's trainmen discovered plaintiff's peril in time to avoid injuring him either by giving signal or stopping the train, and they failed to do either, the question whether they failed to exercise ordinary care to prevent injuring him was properly submitted to the jury. (Page 19.)

Appeal from Green Circuit Court; *Frank Smith*, Judge; reversed.

### STATEMENT BY THE COURT.

At the town of Rector in Clay County, Arkansas, appellant has a main line track and a passing side track running parallel with the main line for nearly a mile and being about nine feet apart. The space between the tracks south of town had been used continuously by pedestrians since the railroad was built. Appellee about six o'clock in the afternoon was walking south along the footpath between appellant's tracks. He saw south of him on the main line a freight train standing still some three hundred yards distant with the engine towards him. Between him and the track on the main line was an engine switching cars on the side track. This engine was approaching near him, and was blowing off steam. Appellee's attention was attracted by this, and he did not look to see what became of the train on the main line; but, as the engine on the passing or side track came near, he walked within a foot of the ends of the ties on the east side of the main line. While thus absorbed and walking on south, the train on the main line, going north at a speed of six or seven miles an hour, ran into him. The pilot beam, which extends beyond the rails about fifteen inches, struck appellee, knocking him down and injuring him severely. The engineer was in his cab on the side next to appellee. The whistle was not blown, the bell was not rung, and there

was no effort to stop the train before appellee was injured. The train was equipped with air, and could have been stopped quickly. The jury might have found the facts as stated above from evidence adduced in behalf of appellee.

On behalf of appellant the fireman on the engine that ran down appellee testified: "When they arrived at Rector, they were flagged by a local brakeman; they slowed up. As they passed down, he saw a couple of men between the tracks. They rolled on down about 50 yards and whistled, signalled to an Iron Mountain train on the siding. Old man Jackson started to go across the track; made out like he was going to cross, and did not go. They got a little closer, and he made another effort to go, but he did not go. Finally they were right down by him, in 6 or 7 feet of him probably, he stepped from between the side track and main track and put his foot on the end of the ties, and next step put it over the rails, and they hit him. Fireman holloed to the engineer to stop; they had hit a man. They ran about four car lengths and stopped. The train was going south. It was about 5:25 in the evening. The first attempt Jackson made to cross the track was something like 60 yards in front of the engine, the next effort he made was about 20, and maybe a little further, and the last attempt was in 8 feet. They were right on him when he made the third attempt."

The engineer testified: "When they arrived at Rector, he was flagged. He pulled down on the main line, and noticed two men between the tracks. They pulled down below the road crossing about one-fourth of a mile south of the depot, and a brakeman called to him to stop; they had killed a man. They were rolling about six or seven miles an hour. The engine was equipped with an automatic bell ringer, and was ringing, and did not cease to ring until they stopped the train. The train was a freight train, containing 45 cars. Stopped in 160 feet after the accident happened. There was an Iron Mountain train standing still on the passing track. The pilot beam extends beyond the rails about 15 inches, the ties extend about 12 inches beyond the rails. He recognized the plaintiff as being the man struck on the 21st of March."

The complaint alleged, among other things, the following: "On the 5th day of May, 1908, the plaintiff was, without fault on his part, and on account of the negligence of the defend-

ant, struck by a moving engine operated along its main line, a short distance south of its depot, whereby the plaintiff's shoulder and collar bone were dislocated, and he was damaged in the sum of $1,999."

The answer contains the following: "Defendant admitted that plaintiff was struck by one of its engines, but denied the injury resulted from the negligence of it or its agents or employees in charge of its train, and denied the plaintiff was wrongfully or negligently injured, and alleged his injury resulted from his own careless conduct, and without the fault of it or its agents, and denied he was damaged in the sum of $1,999."

Among other instructions the court gave the following:

"IV. If you do find that defendant was negligent, that does not mean that your verdict must necessarily be for the plaintiff, but you will further consider the question whether the plaintiff was also negligent; and, if he was, there can be no recovery unless you find defendant liable under instruction No. 5.

"V. If the employees of a railroad company in charge of a train see a man walking along its tracks at a distance ahead sufficient to enable him to get out of the way before the train reaches him, and are not aware that he is insensible of the danger or unable to get out of the way, they have a right to rely on human experience, and to presume that he will act on the principles of common sense and the motive of self-preservation common to mankind in general, that he will get out of the way, to go on without checking the speed of the train until they see he is not likely to get out of the way, when it would become their duty to give an extra alarm by bell or whistle, and if that is not heeded, and it becomes apparent that he will not get out of the way, then, as a last resort, to check its speed or stop the train, if possible, in time to avoid the injury. If, however, the man seen upon the track is known to be, or from his appearance gives them good reason for the belief that he is, insensible of his danger or unable to avoid it, they have no right to presume that he will get out of the way, but should act upon the hypothesis that he might not or would not, and should use the proper degree of care to avoid injuring him. Failing in this, the railroad company would be responsible for damages if by the use of such care, after becoming aware of his negligence, they might have avoided injuring him.

"VI.  If you find from a preponderance of the evidence in this case, either direct or circumstantial, that, in time to have avoided injuring Jackson, the operators of the engine which struck him walking along the track knew, or had reasonable grounds for believing, that he was not aware of the approach of the engine and cars attached and so oblivious to his danger, and therefore failed to give him timely warning, or to use reasonable means to avoid injuring him, but thereafter wilfully or wantonly or recklessly ran the engine and cars on to and against him, you will find for the plaintiff.  If the evidence fails to show all these things by a fair preponderance, you will find for the defendant."

The jury, upon interrogatories propounded, found that appellee was injured by the "northbound train."

The verdict was in appellee's favor in the sum of $312.50. Judgment was entered for that sum, and appellant seeks by this appeal to reverse the judgment.

*Sam H. West* and *J. C. Hawthorne,* for appellant.

1.  Appellee, under the evidence, was plainly guilty of contributory negligence, and cannot recover.  He does not come within any of the exceptions announced in 78 Ark. 60.  In 78 Ark. 355 the facts are entirely different.  79 Ark. 137; 80 *Id.* 186.

2.  He was guilty of inexcusable carelessness.  Contributory negligence follows as a matter of law under such circumstances.  69 Ark. 134; 61 *Id.* 549; 62 *Id.* 158; 65 *Id.* 238; 74 *Id.* 372.  It was his duty to look for the approaching train.  81 Ark. 325; *Ib.* 368; 83 *Id.* 300; 84 *Id.* 270.  See also 85 Ark. 532; 86 Ark. 306; 88 Ark. 172; 62 Ark. 245; 76 *Id.* 10.

3.  There is no testimony or circumstance from which a conclusion could be reached that the employees discovered the plaintiff's position to be a perilous one, and 74 Ark. 407 and 84 *Id.* 478 do not apply.  69 Ark. 380.  This case falls within 82 Ark. 522.

*J. H. Hill* and *Johnson & Burr,* for appellee.

1.  This case was submitted to the jury upon the theory that defendant was guilty of negligence after discovering the peril of the plaintiff, and the antecedent contributory negligence in going upon or in close proximity to the track without looking, etc., is immaterial.  85 Ark. 532; 109 S. W. 514.  The question

was whether defendant was negligent in discovering plaintiff in close proximity to the track. The jury found that issue for plaintiff, and the verdict will not be disturbed, for there was some legal evidence to sustain it. 116 S. W. 660; 67 Ark. 399; 73 *Id.* 377; 75 *Id.* 111; 76 *Id.* 115. The proof shows defendant guilty of actionable negligence. 89 Ark. 496; 85 *Id.* 532; 74 *Id.* 407; *Ib.* 478; 80 *Id.* 186.

2. The instructions were based upon the allegation of the complaint, the theory upon which the case was tried and the evidence adduced. Cases *supra.*

WOOD, J., (after stating the facts.) The undisputed evidence shows that appellee knew when he was walking between the tracks that there was a train on the main line south of him. It was but a short distance away, and he could see it plainly. But, after first looking and seeing the train, he turned his attention to the engine which was passing him on the side track, and did not look to see the movements of the train on the main line. He moved over so near to the main line track that a casual glance would have shown him that he was too near this track for the train that was south to pass him without striking him. In the middle of the track he would have been perfectly safe from the passing engines. He carelessly chose the place of danger. There was nothing in the surroundings to warrant any confusion of his senses. No emergency of peril that should have caused him to act on the sudden impulse. He had ample time for deliberation in his movements, and with any prudence whatever could have avoided the injury he received. It was a plain case of contributory negligence on his part, which the court should have instructed upon the uncontroverted evidence. *Griffie* v. *St. Louis, I. M. & S. Ry. Co.,* 80 Ark. 186; *Burns* v. *St. Louis S. W. Ry. Co.,* 76 Ark. 10; *St. Louis, I. M. & S. Ry. Co.* v. *Johnson,* 74 Ark. 372; *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 134; *Little Rock & F. S. Ry. Co.* v. *Blewitt,* 65 Ark. 238; *Martin* v. *Little Rock & F. S. Ry. Co.,* 62 Ark. 158; *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549.

The proof shows that appellee did not look any more for the train on the main line after he first discovered its position, and that he walked on some fifty or one hundred yards between the tracks in the direction of this train. The passing of the engine

near him was no excuse for his failing to look for the other engine on the main line, nor for his placing himself so near the main line that he could not escape injury. He was apprised of the precise conditions, and his failure to use his eyes, under the circumstances, was inexcusable carelessness. See *St. Louis & S. F. Rd. Co.* v. *Portis,* 81 Ark. 325; *St. Louis S. W. Ry. Co.* v. *Bryant,* 81 Ark. 368; *Adams* v. *St. Louis, I. M. & S. Ry. Co.,* 83 Ark. 300; *St. Louis & S. F. Rd. Co.* v. *Ferrell,* 84 Ark. 270.

The court therefore erred in submitting to the jury the question as to whether appellee was guilty of contributory negligence, as it did in instruction number four. *Ark. Central Rd. Co.* v. *Fain,* 85 Ark. 532; *El Dorado & Bastrop Rd. Co.* v. *Whatley,* 88 Ark. 20. Under this instruction the jury might have found that appellant was negligent, and that appellee was not guilty of contributory negligence. Who can tell?

But, notwithstanding the contributory negligence of appellee, it was a question for the jury as to whether the employees of appellant, having discovered his peril, failed to exercise ordinary care to avoid injury to him. The jury might have found that the engineer and fireman saw appellee, and that they were aware from his movements that he was oblivious of the fact that the northbound train was approaching him; that they could have sounded the whistle or rung the bell or have lessened the speed of the train, in order to avoid striking appellee, and that they failed to exercise any of these precautions, and that his injury was caused by such failure. These questions were presented in the evidence and were correctly submitted. *St. Louis S. W. Ry. Co.* v. *Thompson,* 89 Ark. 496; *Ark. Central Rd. Co.* v. *Fain,* 85 Ark. 532; *St. Louis, I. M. & S. Ry. Co.* v. *Evans,* 74 Ark. 407; *St. Louis, I. M. & S. Ry. Co.* v. *Hill,* 74 Ark. 478; *Griffie* v. *St. Louis, I. M. & S. Ry. Co.,* 80 Ark. 186.

For the error in giving the instruction indicated, the judgment is reversed, and the cause is remanded for a new trial.