## JENSEN v. DENVER & RIO GRANDE RY. CO.

No. 2537.　Decided January 30, 1914 (138 Pac. 1185).

1. NEGLIGENCE—PROXIMATE CAUSE—LAST CLEAR CHANCE. The doctrine of last clear chance relates chiefly to proximate cause, and means that, where plaintiff by his own negligence has placed himself in a dangerous position where injury is likely to result, the defendant, with knowledge, or such notice as is equivalent thereto, of plaintiff's danger, is bound to use reasonable care to avoid injuring him; and where, by the exercise of such care, he might have failed to avoid the injury, this negligence introduces a new element into the case and renders defendant liable because such negligence becomes the proximate cause of the injury; and hence the doctrine does not apply where plaintiff's own negligence proximately contributed to his injury. (Page 110.)

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—APPLICATION. Where the conduct of defendant is wanton and willful, or where it indicates that degree of indifference to the rights of others which may justly be characterized as recklessness, the doctrine of contributory negligence has no application. (Page 111.)

3. RAILROADS—INJURIES TO PERSONS ON TRACK—INSTRUCTIONS. In an action against a railroad company for death of plaintiff's

son while walking on the track, an instruction that, although an injured person may have been guilty of negligence "contributing to the injury," yet such negligence is not a defense, if defendant, after discovering his danger in time to have avoided injury, failed to use reasonable diligence to prevent it, but "goes ahead recklessly and commits the injury," and that the person who has clearly an opportunity of avoiding an accident, notwithstanding the negligence of the other party is responsible, was an instruction on the doctrine of last clear chance, and hence was not objectionable as abrogating the defense of contributory negligence. (Page 111.)

4. NEGLIGENCE—DEGREES—"WILLFULNESS"—"WANTONNESS"—"RECKLESSNESS." To constitute willfulness, wantonness, or recklessness there must be conduct manifesting a reckless disregard of consequences under circumstances indicating that the acts done or omitted will naturally or probably result in injury. Mere negligence is not sufficient, but there must be either a design or purpose to inflict injury, or conduct manifesting a reckless disregard of consequences with a consciousness that injury will naturally or probably result. "Willfulness" implies an act done intentionally and designedly; "wantonness" implies action without regard to the rights of others, a conscious failure to observe care, a conscious invasion of the rights of others, willful, unrestrained action; and "recklessness" a disregard of consequences, an indifference whether a wrong or injury is done or not, and an indifference to natural and probable consequences. (Page 112.)

5. RAILROADS—INJURIES TO PERSONS ON TRACK—INSTRUCTIONS—RECKLESSNESS. In an action against a railroad for the death of plaintiff's intestate while walking on the track, an instruction that if defendant discovered the danger and thereafter failed to use reasonable diligence to prevent an accident, but "goes ahead recklessly and commits the injury," while not implying a willful or intentional injury, implied conduct manifesting a reckless disregard of probable consequences, under circumstances indicating that the act done or omitted would naturally or probably result in injury, so as to be an instruction on recklessness. (Page 113.)

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DEFENSES. To abrogate the defense of contributory negligence, it is sufficient if the proof shows a conscious failure to use care and conduct manifesting a reckless disregard of the rights of others and of the natural and probable consequences resulting from the acts done or omitted. (Page 113.)

7. RAILROADS—ACCIDENT TO PERSONS ON TRACK—DUTY OF TRAIN OPERATIVES. As to one using defendant's track and right of way as used by the public generally with the knowledge and

acquiescence of the road, train employees were required to take notice of such usage, to anticipate the probable presence of persons on or near the track, to keep a reasonable lookout for persons using the track, and to give timely warning of the approach of trains. (Page 113.)

8. RAILROADS—ACCIDENT TO PERSONS ON TRACK—DUTY OF TRAVELER. One not a trespasser, but using a railroad's track and right of way as it was used by the public generally with the knowledge and acquiescence of the road, was required to use care commensurate with the danger, to look and listen, and to be reasonably vigilant to avoid danger. (Page 113.)

9. RAILROADS—ACCIDENT TO PERSON ON TRACK—QUESTION FOR JURY —WILLFUL NEGLIGENCE. In an action against a railroad for the killing of plaintiff's infant son while walking on the track, evidence held to make defendant's reckless disregard of plaintiff's rights, and of the probable result of injury from acts done, or omissions, a question for the jury. (Page 113.)

10. TRIAL—REQUESTED INSTRUCTIONS—GIVEN INSTRUCTIONS. The refusal of a requested instruction on the theory of the defense is not error, where the court, in stating the issues, fully informed the jury of such theory as well as of all other theories and defenses. (Page 115.)

11. TRIAL—REQUEST FOR DIRECTED VERDICT—CONSTRUCTION OF EVIDENCE. It was not error to refuse a request which required the court to declare as a matter of law what the engineer had the right to assume as to the conduct of the deceased, irrespective of the facts and attendant circumstances. (Page 116.)

12. RAILROADS—ACCIDENT TO PERSON ON TRACK—PRESUMPTION OF DUE CARE. The law presumes due care and not negligence, and, in the absence of evidence, train operatives may assume that those traveling on or along a track will exercise due care for their own safety. (Page 116.)

13. RAILROADS—ACCIDENT TO PERSON ON TRACK—PRESUMPTION OF RAILROAD'S DUE CARE. In the absence of evidence, a traveler on or along a track may assume that train operatives will use due care. (Page 116.)

14. RAILROADS—ACCIDENT TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE. In an action against a railroad for the death of plaintiff's son while walking on the track, contributory negligence would defeat a recovery. (Page 116.)

15. TRIAL—REQUESTED INSTRUCTION—INSTRUCTION BAD IN PART. Where part of a requested instruction is bad, the court was justified in refusing the whole of it, even though other parts were proper. (Page 116.)

16. RAILROADS—ACCIDENT TO PERSON ON TRACK—QUESTION FOR JURY. In an action against a railroad for the death of plaintiff's fourteen year old son while walking on the track, *held*, on the evidence, that what the engineer had the right to assume with respect to deceased's leaving the track was for the jury. (Page 116.)

17. RAILROADS—INJURY TO PERSON ON TRACK—ADMISSIBILITY OF EVIDENCE. In such action, where the engineer admitted seeing him 400 feet away and watching him from that point until he was struck, evidence that the boy was going along with his hands in his pockets, his head down, about as fast as he could walk, taking no notice, whatever, was admissible as bearing upon how he appeared to the engineer.[1] (Page 119.)

18. APPEAL AND ERROR—REVIEW—AMOUNT OF VERDICT. Under the Constitution, the amount of the verdict is a matter wholly within the province of the trial court, that being a question of fact; and, where there is any evidence to support it, the Supreme Court has no power to pass upon or set it aside as being excessive.[2] (Page 120.)

19. NEW TRIAL—EXCESSIVE DAMAGES—PASSION OR PREJUDICE. Under the Code provision that the aggrieved party may obtain a new trial by the lower court on the ground of excessive damages appearing to have been given under the influence of passion or prejudice, the lower court, while it may order a remission or set the verdict aside, is not justified in doing so, unless it clearly appears that the jury totally mistook or disregarded the rules of law by which the damages were to be estimated, or wholly misconceived or disregarded all the evidence, and thus committed gross and palpable error, by rendering a verdict so excessive or unjust as to be attributable neither to the charge or the evidence but only to passion or prejudice. (Page 121.)

20. APPEAL AND ERROR—REVIEW—DISCRETION OF TRIAL COURT— GRANTING NEW TRIAL. The action of the trial court in granting a new trial on account of an excessive or unjust verdict, due solely to passion or prejudice, may be reviewed as a question of law and not of fact upon an alleged abuse of discretion, or a capricious or arbitrary exercise of power. (Page 122.)

[1] Fritz v. Western Union Tel. Co., 25 Utah, 263, 71 Pac. 209.
[2] Nichols v. Railroad, 28 Utah, 319, 78 Pac. 866; Budd v. Salt Lake City R. Co., 23 Utah, 515, 65 Pac. 486; Burt v. Utah Light & P. Co., 26 Utah, 157, 72 Pac. 497; Braegger v. Railroad, 24 Utah, 391, 68 Pac. 140; Palmquist v. M. & S. Supply Co., 25 Utah, 257, 70 Pac. 994; Railroad v. Russell, 27 Utah, 457, 76 Pac. 345.

21. DEATH—REVIEW—DISCRETION OF TRIAL COURT—GRANTING NEW
TRIAL. In an action against a railroad for the death of plain-
tiff's fourteen year old son at a crossing, the Supreme Court
could not say that the trial court abused its discretion in
refusing a new trial on the ground that a verdict of $7620
was excessive, where the only attempt to show that it acted
arbitrarily was an arithmetical computation that the cost of
rearing a boy fourteen years of age would about equal his earn-
ings.   (Page 123.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by John Jensen against the Denver & Rio Grande Railroad Company. ·

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Van Cott, Allison & Riter* and *M. E. Wilson* for appellant.

*J. E. Darmer* and *S. P. Armstrong* for respondent.

RESPONDENT'S POINTS.

Appellant's track through block eighty-one, where the boy
was killed, was notoriously, and constantly used by the peo-
ple of the neighborhood as a public thoroughfare, of which
fact appellant's trainmen were well aware.   The boy was a
licensee, and not a trespasser.   Appellant owed him, prac-
tically, the same duties as though the injury occurred at a
public street crossing.   (*Teakle v. Ry.*, 32 Utah, 276, 10 L.
R. A. (N. S.) 489, 90, 1, 3; *Young v. Clark*, 16 Utah, 42,
49; *Christensen v. Ry.*, 29 Utah, 192, 201; *Gesas v. Ry.*, 33
Utah, 156, 168; *Palmer v. Ry.*, 34 Utah, 466, 480, 498.)
The train was running contrary to the city ordinance, and
therefore unlawfully.   Such unlawful act was ·negligence
*per se.   Riley v. Rapid Transit*, 10 Utah, 428, 434, 440; *Ry.
v. Donovan*, 84 Ala., 141-3, 36, A. & E. Ry. C. 151-3;
*Wilkinson v. Ry.*, 37 Utah, 110, 121; *Palmer v. Ry.*, 34

Utah, 466, 502; 33 Cyc. 793-4.) Appellant's negligence, in running at an unlawful speed was the proximate cause of the injury, if by reason of the excessive speed appellant was unable to stop before inflicting fatal injury. The unlawful speed was negligence *per se,* after the discovery of the boy's position of extreme peril, as well as before. (*Neary v. Ry.,* 110 Pac. 226, 236 [Mont.]; *Murrell v. Ry.,* 105 Mo. App. 95.) Appellant cannot excuse itself on the ground of impossibility to stop in time to avoid injury, where its negligence made it impossible. *Murrell v. Ry.,* 105 Mo. App. 88, 91; *Sullivan v. Ry.,* 117 Mo. 214, 23 S. W. 149; *Thompson v. Ry.,* 16 Utah, 281, 52 Pac. 92). The mere fact that the boy was on the track and was struck by the train does not establish his contributary negligence, if the train was running at an unlawful speed. He had a right to assume that the train, even if he knew of its approach or by the exercise of ordinary care should have known of its approach, was running within lawful speed, and to govern himself accordingly, unless ordinary vigilance would have disclosed a faster speed. (*Murrell v. Ry.,* 105 Mo. App. 88, 95, 97; *Sullivan v. Ry.,* 117 Mo. 221; *Traction Co. v. Kidd,* 79 N. E. 347 [Ind.]). If the boy was guilty of negligence in being on the track without using ordinary care for his own safety, still appellant cannot avail itself of such negligence as a defense, if it was running its train at a speed in excess of the speed limit of the ordinance and for that reason was unable to avoid the collision. (*Ballishill v. Ry.,* 64 Mich., 514; *Daffey v. Ry.,* 19 Mo. App. 380; *Sullivan v. Ry.,* 117 Mo. 214; *Winstanly v. Ry.,* 72 Wis., 375.) Contributory negligence is not a defence, if, notwithstanding the negligence of the injured person, the defendant, by the exercise of reasonable care still could have avoided the injury. (*Oliver v. Ry.* 13 Colo. App. 543; *Ry. v. Canvenesse,* 48 Ark. 106; *Birrell v. Ry.,* 23 A. & E. Ann. Cases 1245-6; *Bruggeman v. Ry.,* 23 A. & E. Ann. Cases, 884, Note 891; *Holohan v. Ry.,* 8 Mackay (D. C.) 316; *Coasting Co. v. Folsan,* 139 U. S. 551; Brickw. Sackett sec. 1958; *Everett v. Ry.,* 9 Utah, 340, 349.) When running at unlawful speed, and seeing the boy on the track 300

to 500 feet ahead apparently unaware of the approaching train, no effort was made to reduce the speed or come down to the lawful limit. On the contrary the engineer kept on pumping steam, increasing the speed, and recklessly continued at the unlawful speed until within a few feet of the boy. It was his duty, on seeing the boy, to reduce his speed within the lawful limit and to have his train under control, in case the boy should not leave his position of danger. (*Baumeester v. Ry.*, 63 Mich. 557.) From any viewpoint respondent was entitled, under the evidence, to a verdict. The jury found the issues for the respondent. The whole matter was for the jury, including negligence of appellant, contributory negligence of the boy, and whose negligence was the proximate cause of the injury. (*Everett v. Ry.*, 9 Utah 340, 349.) There was ample evidence to sustain such findings, and the same are not subject to review in this court.

STRAUP, J.

The plaintiff brought this action to recover damages for the death of his son, fourteen years of age, alleged to have been caused by the defendant's negligence. The plaintiff had judgment. The defendant appeals.

The accident occurred within the corporate limits of Salt Lake City. An ordinance forbade the operation of cars at a speed greater than twelve miles an hour, and required a continuous ringing of the bell on engines in motion. There were two parallel tracks, one the defendant's, the other the Western Pacific Railway Company's, running in an easterly and a westerly direction. The tracks and right of way along the place of the accident had for a long time prior to the injury, with the defendant's knowledge, and without its objections, been used as a pathway by the public, especially those living in that vicinity. The deceased, while walking easterly along or upon the defendant's track in pursuit of an errand for his father, who lived near by, was run over and killed by a train of cars operated by the defendant from the west.

The charged acts of negligence are:

Failure to give warning of the approach of the train; failure of the operatives to observe a proper lookout; operating the train at a rate of speed in excess of the ordinance; operating it negligently, recklessly, and wantonly against and over him without warning or attempting to stop after discovering him in a dangerous position on or near the track; and negligently, recklessly, and wantonly dragging him after he had been knocked down and thrown under the train. The defendant denied the alleged acts of negligence, and pleaded contributory negligence and trespass.

The evidence is much in conflict. As shown by the plaintiff, the deceased, on a clear day in June, and in plain view of the train operatives, was walking on the defendant's track. As one of the witnesses testified, the boy "was going direct up the middle of the Rio Grande (the defendant's) track." He "came along there, just didn't seem to be thinking about anything. He had his head down towards the track, going along the same as anybody else would, I guess, not thinking of anything at all. . . . The boy did not see the train coming up behind him." The witness saw the train coming and endeavored to attract the boy's attention and to warn him off, but was unsuccessful. The train ran from twenty-five to thirty miles an hour. No warning was given of its approach, nor was the speed slackened until within a few feet of the boy. The engineer then gave "two toots" and applied the air. The boy was struck and dragged about sixty-five feet. The train ran about 180 feet after it struck him and before it was stopped. It consisted of an engine and tender, two baggage cars, and three or four passenger coaches. It was late. Had it run not to exceed ten or twelve miles an hour, it could have been stopped within twenty feet; twenty-five miles an hour, within 180 feet. The engineer had a clear view of the boy for more than 400 feet.

As shown by the defendant's evidence, the train did not run to exceed eight or ten miles an hour; signals and warnings were given, the bell ringing continuously. The train was not late. It had but one, instead of two, baggage cars, and was properly equipped with brakes. Though so equipped,

and though the track was dry and the grade practically level (eight-tenths of one per cent. upgrade), yet, as testified to by the engineer operating the train, it, running twelve miles an hour, would, on emergency application, require 400 feet to stop it; running forty miles an hour, 1000 feet. He further testified that he saw the boy ahead of him about 400 feet, and that "he was on the right of way some place; I don't know where; I couldn't tell because it was on a curve. I saw he was a boy all right. He had his head down walking along with his back towards me. He looked around when I whistled for Fourth West, turned his face. I saw him all the time from that time on until where I struck him. He didn't get out of my view from when I first saw him until we struck him, or until the engine was so close it shut off my view. I could not tell whether he was on my track, or between the two tracks, or on the Western Pacific track. He stepped in so close that I didn't know whether he stepped into the side of the pilot or not; then I whistled, gave these toots, threw on the air, and applied the emergency brake. The appliances were all in good condition. My emergency brake was working on all the cars and on the drivers of the engine. The wheels would not slide on a day like it was that day. I don't think they did. . . . I didn't slow up until the boy stepped in front of me, and then I threw the emergency on. The emergency acts almost like a gun shot. . . . After I turned on the air I ran the length of the engine and a baggage car. That would be a little more than 100 feet. I made just as quick a stop as I could." When the train stopped the boy was found under the rear platform of the baggage car. From that point to the front end of the engine, together with the distance the boy was dragged, was about 170 feet, if there was but one baggage car, and about 220 feet if there were two, the distance in which the the train had moved after it struck the boy and before it was stopped. Other evidence was adduced by the defendant that the train running eight to ten miles an hour could not, on an emergency, be stopped within twenty feet; that a stop within 150 or 200 feet was considered a good stop.

The court, among other instructions, gave this:

"Although an injured person may have been guilty of negligence contributory to the injury complained of, yet such contributory negligence is not a defense if the defendant discovered such person's danger in time to have avoided the injury, and after discovering such person's danger failed to use reasonable diligence to prevent the accident but goes ahead recklessly and commits an injury. The person who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered responsible."

Complaint is made of it. It is based on two grounds: That there is no evidence to render the doctrine of "the last clear chance" applicable, and, if so, the law on that subject was not correctly stated. It is claimed to be inapplicable on the ground that the evidence without dispute shows the deceased was guilty of contributory negligence which was continuous and contemporaneous and concurring with the defendant's alleged negligence, and as such was a proximate cause of the collision and injury. It is urged to be an erroneous statement on the ground that the charge abrogated the defense of contributory negligence, and in such particular was inconsistent with other portions of the charge; that "contributory negligence is defined to be where a person injured has proximately contributed to the injury by his want of ordinary care, so that but for such want of ordinary care on his part the injury would not have been done." Much is said in the briefs concerning the doctrine of the last clear chance. The charge with respect to it is not happily worded. Portions of it are even faulty; but the error is not to the defendant's prejudice. The charge is that, though the deceased may have been guilty of negligence "contributory to the injury," yet such negligence is no defense, if the defendant discovered the deceased's danger in time to have avoided the injury, and after discovering it "failed to use reasonable diligence to prevent an accident but goes ahead recklessly and commits an injury." That, as appears by the latter portion of the charge, is what the court called the last clear chance.

The doctrine chiefly relates to proximate cause. What is understood by it is this, and as stated by Mr. Justice Day in *Gilbert v. Erie R. Co.*, 97 Fed. 752, 38 C. C. A. 412:

"That where the plaintiff, by his own negligence, has placed himself in a dangerous position, where injury is likely to result, the defendant, with knowledge, or such notice as is equivalent thereto, of the plaintiff's danger, is bound to use reasonable care and diligence to avoid injuring the plaintiff; and where, by the exercise of such care he could do so, fails to avoid the injury, this negligence introduces a new element into the case, and renders the defendant liable, because such negligence becomes the direct and proximate cause of the injury."

So in 29 Cyc. 530 and 33 Cyc. 854. In the latter:

"Under what is commonly known as 'the last clear chance' doctrine, or, as it has been called, the doctrine of 'discovered peril,' notwithstanding a person injured upon or near railroad tracks may be guilty of contributory negligence in going into a dangerous position, the railroad company is nevertheless liable for injuries which may be avoided or lessened by the exercise of ordinary care on its part after his peril is discovered and it fails to exercise such care, as where, after discovering the peril of such person, it negligently causes the injury by failing to exercise proper care in regard to slackening the speed of the train, or in stopping the train, or in giving proper signals or warnings."

It also is exemplified by notes to numerous cases. (Ann. Cas. 1912 B. 888, and 55 L. R. A. 418.)

It is thus seen the doctrine applies, not as in the charge stated where the plaintiff or the deceased "was guilty of negligence contributory to the injury," but where he, by his own negligence, "placed himself in a dangerous position," "exposed himself to danger" where injury is likely to result; and, if the other necessary elements are then present, his negligence is regarded as the remote and defendant's the proximate cause of the injury.

When it is said the plaintiff's or the deceased's negligence in fact contributed to the injury, or, as in the charge stated, was "contributory to the injury," that necessarily implies

that such negligence was a direct and not a remote cause; that it was contemporaneous and concurring **2, 3** with the defendant's negligence and as such was a direct contributing cause, a proximate cause. The doctrine does not apply to such a proposition. The charge in such respect, viewed from the standpoint of the doctrine, is faulty and unfavorable to the defendant, and, had the court stopped there, would be harmful. But the court added, after discovering the deceased's danger, "goes ahead recklessly and commits an injury." That is, the court charged that, though the deceased may have been guilty of negligence contributing to the injury, yet if the defendant in fact discovered the deceased in danger, and after such discovery failed to use reasonable diligence to avoid injury, and went on recklessly and committed the injury, then contributory negligence was no defense. This, if not in words, in substance charged that contributory negligence is no defense to an injury committed recklessly, wantonly, or willfully, thereby injecting an element not essential to the doctrine of the last clear chance. And were it not for the last sentence of the charge, "the party who last has a clear opportunity," etc., it might well be assumed the court had not intended to apply that doctrine, but the principle, as stated by Judge Cooley in 2 Cooley on Torts (3d Ed.) p. 1442, and generally recognized, that

"where the conduct of the defendant is wanton and willful, or where it indicates that degree of indifference to the rights of others which may justly be characterized as recklessness, the doctrine of contributory negligence has no place whatever."

No matter what the court called it, the last clear chance or something else, nevertheless that was in fact the principle which the court gave the jury. But it is urged that neither recklessness nor wantonness, nothing but willfulness, abrogates the defense of contributory negligence; and that the charge, "goes ahead recklessly and commits an injury," is not equivalent to the statement of a willful injury.

The authorities quite generally hold, as stated in 36 Cyc. 1569, that

"to constitute willfulness, wantonness, or recklessness within the meaning of this rule (a willful or wanton injury) there must be conduct manifesting a reckless disregard of consequences under circumstances which indicate that the acts done or omitted will naturally or probably result in injury. Thus it has been held that the injury is caused by recklessness, willfulness, or wantonness, within the meaning of the above rule, . . . where, after the motorman sees a person in peril on or near the track ahead, he fails to use reasonable efforts to avoid an accident, such as to give warning of the car's approach and to slacken the speed of or stop the car."

And in 33 Cyc. 858, that,

"to constitute willfulness, wantonness, or recklessness within the meaning of this rule, mere negligence is not sufficient, but there must be either a design or purpose to inflict injury, or conduct manifesting a reckless disregard of consequences under circumstances where the act done or omitted would probably or naturally result in injury, or, in other words, an act done or omitted with the consciousness at the time that injury will naturally or probably result therefrom."

Of course there is a distinction between willfulness, wantonness, and recklessness. The first implies an act done intentionally, designedly. The second has various meanings. As applied to the subject in hand, action without regard to the rights of others; a conscious failure to observe care; a conscious invasion of the rights of others; willfully unrestrained action. The third, a disregard of consequences; an indifference whether a wrong or an injury is done or not; an indifference to the rights of others and of natural and probable consequences. By some courts recklessness has been held to mean nothing more than mere negligence; by others that it means more. Many courts in characterizing conduct hold it synonymous with and equivalent to wantonness, and by some even to imply willfulness. Much depends upon the subject or the particular conduct with respect to which the term is used. In an indictment, where intent is an essential of the charged offense, a mere allegation that the act was done recklessly or wantonly of course would not be equivalent to an allegation that it was done willfully or intentionally. So, in a complaint founded on negligence,

an allegation that the defendant negligently and recklessly omitted or committed the act has, under the familiar rule that language is construed most strongly against the pleader, been held to mean nothing more than an allegation of mere negligence. Not necessarily so with a charge.

When the court told the jury that if the defendant discovered the deceased's danger, and after discovering it "failed to use reasonable diligence to prevent an accident, but goes ahead recklessly and commits an injury," certainly that told them something more than mere negligence. Though it does not imply a willful or intentional injury, it nevertheless does imply an injury committed in disregard of probable consequences and of the rights of others, a conscious failure to observe care, and implies "conduct manifesting a reckless disregard of probable consequences under circumstances which indicate that the acts done or omitted will naturally or probably result in injury." That, we think, is the obvious meaning of the charge and the thought necessarily conveyed to the jury.

We do not assent to the proposition urged that to abrogate the defense of contributory negligence the proof must show that the injury was committed willfully, in the sense that it was purposely or intentionally committed. It is sufficient if the proof shows a conscious failure to use care and conduct manifesting a reckless disregard of the rights of others and of the natural and probable consequences resulting from the acts done or omitted.

The question, then, is: Was there evidence to render such a charge applicable? We think so. The deceased was not a trespasser. He was making such a use of the defendant's track and right of way as had others and the public generally for a long time, openly, with the knowledge and acquiescence of the defendant and of its employees operating trains along such place. Train operatives, hence, were required to take notice of such usage, to anticipate the probable presence of persons on or near the track along there, and to observe a reasonable lookout for persons

44 Utah—8

making such a use of the track and timely to warn them of the approach of trains. True, the deceased himself was required to use care commensurate with the dangers surrounding him, and to look and listen, and to be reasonably vigilant to avoid injury. The evidence shows he did not do that. As described by some of the witnesses, he walked listlessly and thoughtlessly along or upon the track, apparently oblivious of danger. Though a boy but fourteen years of age, yet on this record, must it be said he negligently put himself in a dangerous position. The engineer, however, as testified to by himself, discovered him 400 feet away, and saw and watched him from thence on until he struck him. True, he further testified that when he first saw the boy he could not tell whether he was on the track on which the train was operated, or on the other track, or between the tracks, and that the boy looked back, and when the train was within a few feet of him he suddenly stepped or jumped in front of it. But, as testified to by witnesses for the plaintiff, he was walking on and along the track on which the train was operated with his head down, apparently oblivious of danger and without knowledge of its approach; that no signals were given by the train operatives until within a few feet of him, about the time he was struck, and that the train was operated at a speed of from twenty-five to thirty miles an hour, and that no effort was made to stop or diminish the speed until the boy was struck; and that the train, if it was running from eight to ten miles an hour, as testified to by the train operatives, could have been stopped within twenty feet, and if running twenty-five miles an hour, within 180 feet. In view of that evidence, together with the evidence that the engineer in fact discovered the boy 400 feet away walking along with his head down, and from thence on watched him until he struck him, and made no effort whatever to avoid the collision until upon the boy, we think the charge applicable. On that evidence, if believed, the conclusion of a reckless and wanton injury was justified; and, as against such an injury committed under such circumstances and as shown by that evidence, contributory negligence is no defense. Though it

may be more probable the injury was not committed in such manner, but, as testified to by the engineer, that the boy, confused and excited, or frightened by the noise of the train as it was about to pass him, suddenly jumped or stepped in front of it, thinking it was approaching on the other track, yet that was for the jury.

For these reasons do we also think no error was committed in refusing the defendant's request to direct a verdict in its favor, and in refusing the request that if the train made sufficient noise and sound to be heard by the deceased prior to the accident, "and if you find from the evidence that he could, by the use of ordinary care, have discovered the approach of said train in time to have avoided his being hit by said train, you will find for the defendant, even though you may find that the bell was not ringing or the train was running at an excessive rate of speed." It is urged these requests ought to have been given on the theory of contributory negligence. Since, as indicated, there is evidence to show a reckless and wanton injury, evidence to render the charge just considered applicable, then of course were these requests for binding instructions properly refused.

The defendant further requested this:

"The engineer had a right to assume that Clarence Jensen was in possession of his senses and faculties, and that as a reasonable person he would step out of the way of harm before the engine reached him, and said engineer was under no duty to attempt to stop his train until it was otherwise apparent to him. If you should find from the evidence that Clarence Jensen was walking down between the track operated by the Western Pacific Railroad Company and that operated by the defendant, and that suddenly, when the train of the defendant was within six, eight, or ten feet of him, he stepped in front of said train, and that he was there run over and killed by said engine, then you are instructed that the defendant is entitled to a verdict, and it is immaterial whether the bell of the defendant's engine was ringing or whether the train was running at a greater rate of speed than twelve miles per hour."

Complaint is made of the refusal to give it. It is especially urged this request presented a chief theory of the defense as to the cause of the accident and that the defendant was entitled to a submission of the case on that theory. The court, in stating the issues, fully informed the jury of such theory, as well as of all other pleaded theories and defenses. The charge is not wanting in that.

But the defendant argues that on the assumed facts stated in the request it was entitled, as therein requested, to a binding instruction that the jury render a verdict in favor of the defendant. We think not. The request erroneously required the court to declare as matter of law what the engineer had the right to assume as to the conduct of the deceased, irrespective of the facts and attendant circumstances. It was not restricted to the conditions and circumstances even as testified to by the defendant's witnesses. It as well applied to those as testified to by the plaintiff's. Being unrestricted and unconditioned, the defendant, to prevail as to this assignment, is required to successfully defend the request against the evidence and all reasonable inferences deducible therefrom most favorable to the plaintiff. That evidence shows that "the engineer" in fact discovered the boy walking on the track in front of the moving train, with his head down, apparently oblivious and unconscious of danger and of the train's approach; that no warning was given him; and that the train was operated at a rate of speed twice that allowed by law. The effect of the request is that the engineer, regardless of all the facts and circumstances in evidence, both favorable and unfavorable to the plaintiff, had the right to assume that the boy "would step out of the way of harm before the engine reached him." Since, as has been seen, there is evidence to show a reckless and wanton injury, it necessarily follows it would not have been proper to have given this portion of the request. Under the evidence, at least that most favorable to the plaintiff, it was a question of fact, not of law, what the engineer had the right to assume with respect to the deceased's leaving the track. What was

said in *L., N. A. & C. Ry. Co., v. Patchen,* 167 Ill. 204, 47 N. E. 368, may here be said:

> "The question was one purely of fact, and whether the servants of the railroad company in charge of the train might assume one thing or another was a question for the jury to determine from all the evidence, and not a question of law, and, had the instruction submitted the question as one of fact, it might be sustained, but as the instruction directed the jury, as a question of law, that the servants of the railroad in charge of the train might assume certain things therein specified (the right to assume that the deceased was rational and that he would exercise reasonable care and caution to keep himself out of danger), it was erroneous."

To the same effect are *C. & A. R. R. Co. v. Sanders,* 154 Ill. 531, 39 N. E. 481; *Neary v. Northern Pac. Ry. Co.,* 41 Mont. 480, 110 Pac. 235; *Murrell v. Railroad,* 105 Mo. App. 88, 79 S. W. 505; *St. Louis, S. W. Ry. Co. v. Jackson,* 91 Ark. 14, 120 S. W. 158.

The law does presume due care, not negligence; and, in the absence of evidence, train operatives may assume those about to cross or traveling on or along a track will exercise care for their own safety, just as the traveler may assume train operatives will use due care. But a train operative may not excuse or justify his negligence on the assumption that the traveler, though rightfully on or about the track, will keep out of the way any more than the traveler may excuse or justify his negligence on the assumption that train operatives will look out for him and not run over him. True, contributory negligence defeats a recovery. Not because the defendant's negligence is thereby excused or justified, but that the plaintiff's or the deceased's negligence is a contributing and concurring cause, a proximate cause of the injury. Whether a train operative, when he has given proper signals and is operating his train in a lawful and reasonably careful manner, may, on discovering a traveler on or along the track, assume he has knowledge of the approach of the train and will timely leave the track is dependent upon the particular facts and circumstances of the situation, and hence is a question of fact, not of law. Much less may one who has given no such signals and

who is operating his train in an unlawful and negligent manner—a wrongdoer—indulge in any such legal presumption. The request permitted the jury to find that such a one, though he discovered the deceased walking along the track in front of the moving train, with his head down and apparently oblivious of danger, and though the train was operated in an unlawful and negligent manner, with recklessness and wantonness, nevertheless could, regardless of these and all other facts, assume as matter of law—assume in all cases, no matter what the facts and circumstances may be—that the traveler, here the boy, would timely step out of the way. Such a proposition is not sustained by either law or logic. Since this portion of the request is bad, the court was justified in refusing the whole of it, though other portions may have been proper. While the latter portion is not as objectionable as the first, yet the vice of the whole request is an attempt to rule the case on but two propositions regardless of all others: First, if the boy was on the track, then the engineer could assume, regardless of all other facts and circumstances, that he would timely step out of the way; and, secondly, if he was not on the track, but between the tracks, and "suddenly stepped in front of the engine," then that ended the case, regardless of whether he stepped from a place of safety into danger, or what influenced or induced his stepping in front of the engine, and regardless of all other facts and questions. Here, again, the request is unrestricted. It applies to a voluntary as well as an involuntary act; to thoughtlessly and negligently stepping in front of the engine as well as stepping in front of it independently of volition and wholly induced by fright, excitement, or confusion arising from the suddenness of a threatened peril in the creation of which both the deceased and the train operatives were actors. The request is so worded that though the engineer discovered the boy between the tracks in a perilous situation there walking along in front of the moving train apparently oblivious of danger, though no warning was given, though the train was operated in an unlawful, negligent, and reckless manner, and though the boy, when the train was upon him, through fright

and excitement and independently of volition, suddenly jumped or stepped in front of instead of away from the train, yet that ended the case. That but seeks exoneration by looking to the effect rather than the cause. In view of the evidence, the case is not to be controlled by such isolated fact. We think the request was properly refused.

Another assignment relates to evidence. A witness, after testifying that he saw and watched the boy walking along the track as the train approached and attempted to warn him, was asked by plaintiff's counsel: "Now, what was the appearance of the boy, at the time you had seen him along the track, as to whether he realized the train was coming?" This was objected to on the ground that it was incompetent. The court ruled: "He can state what his appearance was." Then, after some argument plaintiff's counsel propounded this: "What was the appearance of the boy as to noticing, whether he was noticing the train or aware of it or unconscious?" This also was objected to. The objection was overruled. The witness answered: "Never took any notice at all, just like he never knew there was a train around, going along with his hands in his pockets and his head down, going pretty near as fast as he could walk." We think the question within the court's ruling called for competent evidence. (*Fritz v. Western Un. Tel. Co.*, 25 Utah, 263, 71 Pac. 209.) How the boy appeared to others at the time and under similar circumstances as to his noticing or not noticing the train, or as to his apparent knowledge of its approach or lack of it, or his apparent obliviscence or realization of danger, was some evidence tending to show how he, in such respect appeared to the engineer, who admittedly discovered him 400 feet away and watched him from thence on until he struck him. The answer, in some particulars, may not be strictly responsive, but no motion was made to strike it, or any portion of it. On the whole, the conduct described by the answer is as favorable to the defendant as to the plaintiff.

Further complaint is made on the alleged ground that the verdict was a chance verdict, a quotient verdict. On such

ground, among others, a new trial was asked. The motion (as is permissible under the statute) was supported by affidavits of two jurors. It was opposed by counter affidavits of the same jurors and by counter affidavits of the other jurors. When it was heard, all the jurors were ruled in and separately examined and cross-examined respecting the method by which the verdict was made up. The two affidavits filed by the defendant in a way show a quotient, a chance verdict. The other affidavits do not. The court so found, and overruled the motion. The finding is not only supported by a fair preponderance of the evidence adduced on the subject, but is so clearly supported by the overwhelming weight as hardly to justify a contrary finding; the statements contained in the affidavits of the two jurors being greatly modified and explained by their own counter affidavits and by their own testimony.

Lastly it is urged the court erred in refusing to grant a new trial on the alleged ground that the verdict is excessive and was rendered under the influence of passion and prejudice. The respondent contends we, under the Constitution and under numerous prior decisions of this court, are powerless to review this ruling.

Since statehood, and as announced in *Nichols v. Railroad,* 28 Utah, 319, 78 Pac. 866, is has repeatedly and uniformly been held

"that the amount of the verdict, under our Constitution, is a matter wholly within the province of the trial court and jury; the same being a question of fact. Where, as here, there is any evidence to support the verdict, we have no power to pass upon it or to set the verdict aside as being excessive."

In *Budd v. Salt Lake City Ry. Co.,* 23 Utah, 515, 65 Pac. 486, it was said that it was "useless to longer incumber the records with such questions in such cases;" in *Burt v. Utah Light & P. Co.,* 26 Utah 157, 72 Pac. 497, that this court is unauthorized "to review the evidence to determine whether or not the damages are excessive." To the same effect are *Blaegger v. Railroad,* 24 Utah,

391, 68 Pac. 140; *Palmquist v. M. & S. Supply Co.*, 25 Utah, 257, 70 Pac. 994, and *Railroad v. Russell*, 27 Utah, 457, 76 Pac. 345. In these cases many other prior cases from this jurisdiction are cited to the same effect. A rule so long and so firmly settled as this will not now be disturbed. The verdict is for $7620. The defendant urges that, while there may be evidence to support a verdict for compensatory damages for some substantial amount, yet there is no evidence to support this verdict, a verdict for $7620. The argument but amounts to the claim that the verdict is excessive; that the amount rendered is greater than or in excess of that justified by the evidence. Of course neither party is entitled to our judgment of what we, on the evidence, think the damages should be. We are not the tribunal to measure that or to pass judgment on it, and cannot review the evidence for any such purpose.

Neither is either party on that question entitled to the judgment of the court below in a case of tort tried to a jury. Both parties, as to that, are entitled to the unprejudiced judgment of the jury. That is exclusively within their province. Their power and discretion, when properly exercised and when they have been properly directed as to the measure of damages and the mode of assessing it, may not be interfered with merely because the court above or below may think the amount rendered is too large, or even may think it appears to be larger than the evidence apparently or fairly justifies. A court, vacating a verdict and granting a new trial by merely setting up his opinion or judgment against that of the jury, but usurps judicial power and prostitutes the constitutional trial by jury. Still the jury cannot be permitted to go unbridled and unchecked. Hence the Code that a new trial on motion of the aggrieved party may be granted by the court below on the ground of "excessive damages appearing to have been given under the influence of passion or prejudice." Whenever that is made to appear, the court, when its action is properly invoked, should require a remission or set the verdict aside and grant a new trial. But, before the court is justified to do that, it should

clearly be made to appear that the jury totally mistook or disregarded the rules of law by which the damages were to be regulated, or wholly misconceived or disregarded all the evidence, and by so doing committed gross and palpable error by rendering a verdict so enormous or outrageous or unjust as to be attributable to neither the charge nor the evidence, but only to passion or prejudice. Whether a new trial should or should not be granted on this ground, of necessity, must largely rest within the sound discretion of the trial court.

Still that court, in such particular, is not supreme or beyond reach. Its action may nevertheless be inquired into and reviewed on an alleged abuse of discretion, or a capricious or arbitrary exercise of power in such respect. Such a review is not a review of a question of fact, but of law. A ruling granting or refusing a motion for a new trial is certainly reviewable when the proceedings with respect to it are properly preserved and presented. That has not been questioned. Of course the ruling will not be disturbed on evidence in conflict or on matters involving discretion. Yet our power to correct a plain abuse of discretion or undo a mere capricious or arbitrary exercise of power cannot be doubted.

We have said this much, in view of plaintiff's contention and of opinions heretofore somewhat loosely expressed at the bar, that in a case of tort tried to a jury, no matter how enormous or flagrantly outrageous a verdict may be, the trial court alone is authorized to grant relief; and though that court may, by a clear abuse of discretion and by an arbitrary exercise of power, have gone as wild as did the jury and suffered an outrageous and unjust verdict to stand, or on mere whimsical and capricious grounds set a verdict aside amply supported by competent evidence, yet we are powerless to interfere. We do not so understand the prior decisions. In all of them where it was said this court is not authorized to review a question of excessive damages, such question being one of fact, the statements are qualified, except to ascertain "if there is any evidence to support the verdict," "except so far as may be necessary to determine questions of

law." We reaffirm that. And since an assignment based on a ruling alleged to have been made by an abuse of discretion or by a mere capricious or arbitrary exercise of power, in granting or refusing a new trial presents a question of law, not of fact, we may as such review it.

Now, looking at the question in hand, there is nothing to show that this verdict resulted from passion or prejudice, and certainly nothing to show the trial court, in overruling the motion, abused his discretion or acted capriciously or arbitrarily. The only attempt to show anything of that kind is by arithmetical computations that the cost of rearing a boy fourteen years of age would about equal his earnings and that upon the doctrine of chances it is not likely he, after his minority, would have yielded much, if anything to his parents of any greater pecuniary value. We think no abuse of discretion shown in overruling the motion.

Let the judgment be affirmed with costs.

McCARTY, C. J., and FRICK, J., concur.